IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, | Civ. No. 1:17-cv-00381-AA |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| JAY HOROWITZ; KIM HOROWITZ; ELITE MOVING SYSTEMS, INC., | |
| Defendants. | |

Aiken, District Judge.

This matter comes before the Court on Defendants Jay and Kim Horowitz's Motion for Summary Judgment. ECF No. 10. For the reasons set forth below, the motion is DENIED.

## BACKGROUND

### I. The Policy

This is an action for declaratory relief. Plaintiff Scottsdale Insurance Company ("Scottsdale") is an Arizona-based corporation. Compl. 2. Scottsdale issued a general liability insurance policy (the "Policy") to Elite Moving Systems, Inc. ("EMS"), a now-inactive California corporation. The Policy was to be effective from March 4, 2014, through March 4, 2015 and would provide one million dollars in coverage for bodily injury and property damage. Jones Decl. Ex. 2, at 9. The Policy obliged Scottsdale to defend and indemnify EMS for

qualifying bodily injury and property damage which "occurs during the policy period." Jones Decl. Ex. 2, at 11.

EMS financed the premium for the policy through IPFS Corporation, a premium finance company. Second Jones Decl. Ex. 1. EMS executed a Premium Finance Agreement (the "Agreement") with IPFS. Second Jones Decl. Ex. 1. The Agreement included the following term:

> Insured [EMS] irrevocably appoints Lender [IPFS] attorney-in-fact with full power of substitution and full authority upon default to cancel all policies above identified, receive all sums assigned to its Lender or in which it has granted Lender a security interest and to execute and deliver on behalf of the insured documents, Instruments, forms and notices related to the listed insurance policies in furtherance of this Agreement.

Second Jones Decl. Ex. 1.

EMS failed to pay IPFS for the premiums and, on April 28, 2014, IPFS mailed a Notice of Cancellation to EMS, effective May 1, 2014. Jones Decl. Ex. 3. Pursuant to its authority under the Agreement, IPFS notified Scottsdale on April 28, 2014, that the Policy was cancelled, effective May 1, 2014. Second Jones Decl. Ex. 2, at 1.

Another California corporation, known as Elite Moving Solutions, Inc. ("Solutions"), was incorporated on March 19, 2015, and may be the successor entity to the now-defunct EMS. Jones Decl. Ex. 1.

## II. The Underlying Lawsuit

On July 25, 2013, Jay and Kim Horowitz contracted with EMS and Lile International Companies ("Lile") to move the Horowitzes' possessions from California to Talent, Oregon. Lile and/or EMS hired Curtis Wiles and Jason Morgan to assist in moving the Horowitzes' property. The Horowitzes allege that Wiles and Morgan had extensive criminal backgrounds and that EMS and/or Lile failed to perform criminal background checks before hiring them.

The Horowitzes allege that Wiles and Morgan used information learned during the move to plan a robbery of the Horowitzes' home. On May 3, 2014, Morgan and a man named James Turner broke into the home and assaulted the Horowitzes. Morgan and Turner then stole approximately $83,000 worth of personal property, which they planned to divide with Wiles.

The Horowitzes filed suit against EMS and Solutions, among other defendants, in Jackson County Circuit Court on March 18, 2016, with an amended complaint filed on March 30, 2016 (the "Underlying Lawsuit"). Andersen Decl. Ex. 1, 2. Scottsdale initially undertook to defend EMS and Solutions in the Underlying Lawsuit and Portland attorney Michael Hallinan was retained to represent EMS and Solutions. Andersen Decl. Ex. 3, 4. Solutions filed a motion to dismiss based on lack of personal jurisdiction. Second Jones Decl. Counsel for the Horowitzes and Mr. Hallinan discussed dismissing Solutions from the action based on the understanding that EMS had liability coverage of up to one million dollars. Andersen Decl. Ex. 5. On June 6, 2016, Mr. Hallinan replied that EMS had one million dollars in coverage "and the adjuster has confirmed no reservation of rights has been asserted." Andersen Decl. Ex. 6. The parties stipulated to the dismissal of Solutions from the Underlying Lawsuit on June 20, 2016. Andersen Decl. Ex. 7, at 3-4.

Scottsdale subsequently issued a reservation of rights letter on January 12, 2017. Second Jones Decl. Ex. 2. In the reservation of rights letter, Scottsdale asserted that the Policy was properly terminated by IPFS on May 1, 2014. Second Jones Decl. Ex. 2, at 1. As the assault and robbery of the Horowitzes' home occurred on May 3, 2014, Scottsdale claims that the loss is not covered by the Policy and Scottsdale has no duty to defend or indemnify EMS in the Underlying Lawsuit. Second Jones Decl. Ex. 2, at 1. This action for declaratory relief followed.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011); Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.* "This burden is not a light one. . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citations omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the non-moving party. *Shuimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004). A "mere disagreement or the bald assertion that a genuine issue of material fact exists" is not sufficient to preclude the grant of summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). When the non-moving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary[.]" *LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (quotation marks and citation omitted).

The substantive law governing a claim or defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

## DISCUSSION

The Horowitzes move for summary judgment on the basis that Scottsdale has either waived its right to refuse to defend or indemnify EMS under the Policy, or that it is estopped from asserting that right. The parties agree that the Policy should be interpreted under the laws of California.

### I. The Sur-Reply

As a preliminary matter, the Court notes that the Memorandum in Support of the Horowitzes' Motion contains little in the way of substantive legal argument, much of which is abandoned in the Horowitzes' Reply in favor of new legal theories and new factual allegations. "To the extent that [a reply] presents new information, it is improper." *Tovar v. U.S. Postal Serv.* 3 F.3d 1271, 1273 n.3 (9th Cir. 1993). However, a court may consider new information in a reply when the non-moving party has an opportunity to respond. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

In this case, the Horowitzes' Reply was improper. The Court has determined, however, that the most equitable and efficient remedy is allow Scottsdale to file its requested Sur-Reply.

### II. Conferral

As a further preliminary matter, the Court is dismayed to find that it must discuss the necessity of compliance with this District's Local Rules. "District courts have broad discretion in interpreting and applying their local rules." *Miranda v. S. Pac. Transp. Co.*, 710 F.2d 516,

521 (9th Cir. 1983). Local Rule 7-1(a) requires that, with certain limited and presently inapplicable exceptions, "every motion must certify that . . . the parties made a good faith effort through personal or telephonic conferences to resolve the dispute and have been unable to do so." LR 7-1(a)(1)(A). "When conferring about a dispositive motion, the parties must discuss each claim, defense, or issue that is the subject of the proposed motion." LR 7-1(a)(2). "The Court may deny any motion that fails to meet this certification requirement." LR 7-1(a)(3).

In this case, the Motion for Summary Judgment does not contain the required certification. The Horowitzes' counsel admits that he failed to confer with Scottsdale's counsel before filing his motion. In the Reply, the Horowtizes' counsel offers two explanations for this failure:

First, counsel submits that Oregon state law does not require conferral before filing a motion pursuant to Ore. R. Civ. P. 47 and that he "failed to realize this distinction between state and federal practice." The Court is unimpressed by this explanation. The Horowitzes' counsel has been in practice for many years and a survey of ECF reveals that this is far from counsel's first case in federal court.

Second, counsel offers that "conferring would not have saved either side the expense of a motion for summary judgment." The Court is even less impressed with this excuse, especially in light of the fact that counsel goes on to concede that he cited to inapplicable provisions of California law in his original motion and that his request for attorney fees and sanctions are without merit.[1] These issues might have been clarified, if not resolved entirely, had counsel taken the time to confer. The purpose of Local Rule 7-1(a) goes beyond merely "saving the

---

[1] Counsel also suggests that Scottsdale is at fault for failing to produce certain documents, discussed below, despite the fact that the Horowitzes filed their Motion only days after the Answer and before substantive discovery could have taken place. Indeed, Scottsdale produced the relevant document in support of its Sur-Reply. This issue might also have been resolved by conferral.

parties the expense of a motion for summary judgment." The Rule also promotes judicial economy and efficiency by sparing the Court the necessity of wading through frivolous or meritless arguments.

Although the Court will address the substance of the Horowitzes' motion in the following sections, counsel's failure to comply with LR 7-1(a) supplies an independent basis for denying the motion. Counsel is instructed to review the Local Rules for the District of Oregon and familiarize himself with their requirements. The Court expects that counsel will comply with the Local Rules in any future motions. Failure to confer and certify the fact of conferral in future motions will result in the denial of that motion without further consideration.

### III.  Statutory Issues

In their original motion, the Horowitzes asserted that, pursuant to Cal. Ins. Code §§ 676.2 and 677.2, Scottsdale was required to provide EMS with ten days' notice prior to the cancellation of the Policy. The Horowitzes argue that, because EMS was given only three days' notice, Scottsdale's cancellation of the policy was improper and ineffective. The Horowitzes suggest that this violation of California law was so flagrant and obvious that they are entitled to attorney fees and the Court should sanction Scottsdale for bringing this action.

In the Response, Scottsdale points out that, because the Policy was financed by IPFS, it is governed by Cal. Ins. Code § 673, rather than §§ 676.2 or 677.2. Under that statute, a finance company may, by power of attorney, exercise the right to cancel an insurance contract on behalf of the insured in the event of non-payment of premiums. Cal. Ins. Code § 673(a). "The statute provides that the lender's . . . instructions to cancel are conclusive for all purposes with respect to the insurer." *Pac. Auto Ins. Co. v. Wolff*, 72 Cal. App. 3d 537, 540, Cal. Rptr. 164 (Cal. Ct. App.

1977). "Thus, once the lender has instructed the insurer to cancel, the cancellation is effective." *Id.* at 540-41.

In their Reply, the Horowitzes concede that § 673 is the applicable statute, but argue that unless Scottsdale produces the Agreement between EMS and IPFS, "we are left to wonder whether IPFS ever had the authority to issue a notice of cancellation."[2] If Scottsdale produced the waiver, the Horowitzes concede, this case will turn on the application of principles of waiver and estoppel. Scottsdale produced the Agreement in support of its Sur-Reply. Second Jones Decl. Ex. 1. This disposes of the Horowitzes' statutory argument.

### IV. Waiver and Estoppel

The Horowitzes argue first that, by undertaking to defend EMS in the Underlying Lawsuit, Scottsdale has waived its right to dispute whether or not the facts giving rise to that representation are outside the scope of the Policy. Next, the Horowitzes argue that the representations made to them by counsel for EMS regarding liability insurance preclude Scottsdale from disputing coverage under principles of equitable estoppel.

#### A. Waiver

Under California law, "waiver is the intentional relinquishment of a known right after knowledge of the facts." *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 31, Cal. Rptr. 2d 370 (Cal. 1995) (internal quotation marks, alterations, and citations omitted). "The burden is on the party claiming a waiver to prove it by clear and convincing evidence that does not leave the matter to speculation, and doubtful cases will be decided against a waiver." *Id.* A waiver may be express or implied, "based on conduct indicating an intent to relinquish the right." *Id.* The doctrine of waiver "cannot be applied to expand coverage." *Id.* at 32.

---

[2] The Court notes that documents like the Agreement between EMS and IPFS are normally sought as part of the discovery process, rather than in the course of briefing a premature motion for summary judgment.

In *Ringler Assocs. Inc. v. Maryland Cas. Co.*, the insurer undertook to defend the insured for over two years before issuing a reservation of rights. *Ringler Assocs., Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1188, 96 Cal. Rptr. 2d 136 (Cal. Ct. App. 2000). The insured argued that, by undertaking the defense, the insurer had admitted coverage and waived its right to contest its duty to defend or indemnify. *Id.* The California Court of Appeals rejected this argument as "completely meritless." *Id.* "[T]he courts have repeatedly held that an insurer does not waive or relinquish any coverage defenses it fails to assert at the time of its acceptance of a tender of defense, even when it does not make any express and full reservation of rights for a substantial period of time after the defense has been accepted." *Id.* at 1189.

In this case, the record suggests that the loss giving rise to the Underlying Lawsuit may have taken place outside of the period covered by the Policy. As the California Supreme Court observed, the doctrine of waiver cannot be applied to expand coverage. Consistent with *Ringler*, Scottsdale has not waived its waived its rights to contest coverage simply by undertaking to defend EMS, or by issue a letter reserving its rights months after undertaking the defense of EMS.

### B. Equitable Estoppel

To demonstrate equitable estoppel, a party must show "(1) that the person to be estopped had knowledge of the true facts; (2) that action on his part intended or reasonably interpreted as intended to be acted upon by the person asserting the estoppel; (3) that the one asserting the estoppel was ignorant of the true facts; and (4) that there was detrimental reliance on the estopped person's conduct." *Miller v. Elite Ins. Co.*, 100 Cal. App. 3d 739, 754, 161 Cal. Rptr. 322 (Cal. Ct. App. 1980). In the insurance context, this requires (1) a "reasonable belief" that the insurer would provide coverage; and (2) a finding of detrimental reliance by the party asserting

estoppel. *Ringler*, 80 Cal. App. 4th at 1190. "The existence of estoppel is a question of fact and the party asserting estoppel bears the burden of proving it." *S. F. Bay Area Rapid Transit Dist. v. Gen. Reinsurance Corp.*, 111 F. Supp. 3d 1055, 1070 (N. D. Cal. 2015) (internal citations omitted).

"It is the general and quite well settled rule of law that principles of estoppel and implied waiver do not operate to extend the coverage of an insurance policy after the liability has been incurred or the loss sustained." *Aetna Cas. & Sur. Co. v. Richmond*, 76 Cal. App. 3d 645, 652-53, 143 Cal. Rptr. 75 (Cal. Ct. App. 1977) (internal quotation marks, alterations and citations omitted).

> While this statement of the rule is generally applied, there is a well-established exception: The general rule supported by the great weight of authority is that if a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or non-coverage. In other words, the insurer's unconditional defense of an action brought against its insured constitutes a waiver of the terms of the policy and an estoppel of the insurer to assert such grounds.

*Miller*, 100 Cal. App. 3d at 755 (internal quotation marks and citation omitted).

In this case, Scottsdale did not undertake an "unconditional defense" of EMS, nor is this a case where Scottsdale is asserting a ground of forfeiture or noncoverage for the first time "in an action upon the policy." Rather, Scottsdale issued a letter reserving its rights in January 2017, during the pendency of the Underlying Lawsuit.

In *General Reinsurance*, the insurer contended that the injury in question had occurred after the insurance policy ended. *Gen. Reinsurance Corp.* 111 F. Supp. 3d at 1059. The court held that "the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its

terms, or risks expressly excluded therefrom." *Id.* at 1071 (quoting *Supervalu, Inc. v. Wexford Underwriting Mgrs., Inc.*, 175 Cal. App. 4th 64, 77, 96 Cal. Reptr. 3d 316 (Cal. Ct. App. 2009)). "[T]o the extent that the date of injury falls outside of General Reinsurance's excess coverage policy, BART cannot use equitable estoppel to find that it does. For this reason, alone, estoppel does not apply." *Id.* Here, as in *General Reinsurance*, the Horowitzes cannot use the doctrine of equitable estoppel to expand the Policy to cover a loss that appears to have occurred after the Policy was cancelled. On this record, the motion for summary judgment based on equitable estoppel must be denied.

Even assuming that equitable estoppel did apply, the record is not sufficiently developed for the Court to find all of the necessary elements. "The existence of equitable estoppel generally is a factual question for the trier of fact to decide, unless the facts are undisputed and can support only one reasonable conclusion as a matter of law." *Schafer v. City of Los Angeles*, 237 Cal. App. 4th 1250, 1264, 188 Cal. Rptr. 3d 655 (Cal. Ct. App. 2015). On this limited record, the Court concludes that factual issues would preclude a grant of summary judgment based on equitable estoppel.

## CONCLUSION

For the reasons set forth above, Defendants Jay and Kim Horowitz's Motion for Summary Judgment is DENIED.

It is so ORDERED and DATED this 21st day of September, 2017.

_____
Ann Aiken
United States District Judge