IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, | Civ. No. 1:17-cv-00381-AA |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| JAY HOROWITZ; KIM HOROWITZ; ELITE MOVING SYSTEMS, INC., | |
| Defendants. | |

AIKEN, District Judge.

This matter comes before the Court on a Motion for Summary Judgment, ECF No. 38, filed by Plaintiff Scottsdale Insurance Company ("Scottsdale") and a Motion to Strike and to Supplement the Record, ECF No. 41, filed by Defendants Jay Horowitz and Kim Horowitz (collectively, the "Horowitzes"). Defendant Elite Moving Systems, Inc. ("EMS") has not appeared in this case or responded to the motions. Oral argument was held on the motion on July 10, 2019. ECF No. 49. For the reasons set forth below, the Horowitzes' Motion to Strike is DENIED and Scottsdale's Motion for Summary Judgment is GRANTED.

## BACKGROUND

Plaintiff Scottsdale is an insurance corporation organized under the laws of Ohio, with its principal place of business in Arizona. Defendant EMS is a now-inactive corporation organized

under the laws of California with its principal place of business in California. Defendants Jay and Kim Horowitz are residents of Oregon.

## I. The Policy

In 2014, Scottsdale issued a general liability insurance policy to EMS, policy number CPS1851193, which was to run from March 4, 2014, to March 4, 2015 (the "Policy"). First Am. Compl. ("FAC") Ex. B. ECF No. 34-2. The Policy covered "bodily injury" and "property damage" occurring "during the policy period." FAC Ex. B, at 10.

EMS financed the premium for the Policy through IPFS Corporation ("IPFS"), a premium finance company. EMS executed a Premium Finance Agreement (the "Agreement"), which set forth the terms of the premium financing relationship between EMS and IPFS, including terms granting power of attorney to IPFS with respect to the Policy and establishing IPFS's right to cancel the Policy if EMS defaulted on its obligations to IPFS. Second Jones Decl. Ex. 1. ECF No. 22.

EMS subsequently failed to pay installments to IPFS as required by the Agreement. Pursuant to the terms of the Agreement, IPFS mailed a Notice of Cancellation to EMS on April 28, 2014. FAC Ex. C. In the Notice of Cancellation, IPFS exercised its authority under the Agreement and notified Scottsdale that the Policy was cancelled, effective May 1, 2014.

## II. The Underlying Action

On July 25, 2013, the Horowitzes contracted with EMS to move their belongings from West Hills, California, to Talent, Oregon. FAC Ex. A., at 1. In August or September 2013, EMS hired Curtis Wiles and Jason Morgan to unload the Horowitzes' belongings in Talent and paid Wiles and Morgan "under the table in cash." *Id.* EMS did not perform background checks and so did not discover that Morgan and Wiles had criminal histories or were otherwise unsuited

for their positions. *Id.* at 2. While unloading the Horowitzes' property, Morgan and Wiles learned about the layout of the Horowitzes' home and the value of the Horowitzes' property. *Id.*

On May 3, 2014, Morgan and an accomplice named James Turner entered the Horowitzes' home and stole property worth $83,000.[1] *Id.* at 2-3. During the robbery, Morgan and Turner brutally assaulted Jay Horowitz, leaving him with severe physical and psychological injuries and considerable medical expenses. *Id.*

On March 18, 2016, the Horowitzes filed a complaint in Jackson County Circuit Court against EMS, Case Number 16CV08738 (the "Underlying Action"). In an amended state court complaint, filed March 30, 2016, the Horowitzes alleged a claim against Elite Moving Solutions, Inc. ("Solutions"), a successor entity to the now-defunct EMS. Compl. Ex. A. ECF No. 1.

On May 5, 2016, the Horowitzes' counsel was contacted by attorney Michael B. Hallinan, who identified himself as counsel for EMS. Am. Ans. Ex. 3. ECF No. 35-3. Hallinan informed the Horowitzes that he had "not yet received a file from our client's insurer, and we have not reviewed any investigation in this matter." *Id.* A follow-up letter on May 16, 2016, indicated that Hallinan was also counsel for Solutions. Am. Ans. Ex. 4.

On June 6, 2016, Hallinan and the Horowitzes' counsel agreed to dismiss Solutions in favor of retaining EMS as a defendant in the Underlying Action on the understanding that EMS had liability insurance coverage. Am. Ans. Ex. 5. In reply, Hallinan wrote "I can confirm $1 million in coverage, and will send the dec page/policy [sic], and the adjuster has confirmed no reservation of rights has been asserted." Am. Ans. Ex. 6.

---

[1] The operative second amended state court complaint alleges that Wiles "inspired" Morgan and Turner to commit the robbery.

On June 20, 2016, the Horowitzes entered into a stipulated motion to dismiss Solutions from the Underlying Action and substitute EMS as the defendant, which was accepted by the state court. Am Ans. Exs. 7, 8.

On January 12, 2017, Scottsdale's coverage counsel sent a letter to EMS notifying it that Scottsdale was asserting a reservation of rights on the basis that the robbery of the Horowitzes' home occurred on May 3, 2014, which was two days after IPFS cancelled the Policy. Second Jones Decl. Ex. 2. In that letter, Scottsdale reserved its right to deny coverage and to withdraw from EMS's defense in the Underlying Action. *Id.* Scottsdale also reserved the right to file a declaratory judgment action to determine its rights and obligations under the Policy. *Id.* The Horowitzes learned of the reservation of rights on January 19, 2017. Anderson Decl. ECF No. 39-3.

The present action followed on March 7, 2017. ECF No. 1. On May 17, 2017, the Horowitzes moved for summary judgment, which was denied in an Opinion and Order issued on September 21, 2017. ECF Nos. 10, 25. The present Motion for Summary Judgment, this time filed by Scottsdale, followed.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011); Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.* "This burden is not a light one. . . . The non-moving party must do more than show

there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citations omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the non-moving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004). A "mere disagreement or the bald assertion that a genuine issue of material fact exists" is not sufficient to preclude the grant of summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). When the non-moving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary[.]" *LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (quotation marks and citation omitted).

The substantive law governing a claim or defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id.*

## DISCUSSION

Scottsdale seeks a declaratory judgment that it has no obligation to defend or indemnify EMS in the Underlying Action. Scottdale has filed a Motion for Summary Judgment and the Horowitzes have filed a Motion to Strike. The parties agree that the Policy should be interpreted under the laws of California.

I. **Motion to Strike and Supplement the Record**

A. **Motion to Strike**

The Horowitzes have filed a Motion to Strike, ECF No. 41, in which they seek to strike the Reply and its supporting Jones Declaration, ECF No. 40. The Reply and Jones Declaration state that Scottsdale issued a liability insurance policy to Solutions, but that the policy was issued on August 14, 2015. Scottsdale asserts that the Horowitzes' injury would therefore fall outside of Scottsdale's obligation to defend and indemnify Solutions, even if Solutions had been retained as a defendant in the Underlying Action. The Horowitzes contend that this "new allegation of fact, raised for the first time in a Reply, gives [defendant] no opportunity to respond with factual inquiry or challenges."

Although portions of a reply brief that present new information are improper, *see Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 n.3 (9th Cir. 1993), the effective date for Solutions's insurance policy was not raised for the first time in the Reply. That factual detail is in the "Statement of Facts" section of Scottsdale's Motion for Summary Judgment:

> Scottsdale retained counsel to defend EMS under general liability policy number CPS1851193, issued for the policy period March 4, 2014 to March 4, 2015 (the 'Policy') and to defend Solutions under general liability policy number CPS2236769, *effective August 14, 2015, to August 14, 2016.*

Pl. Mot. Summ. J. 2. (emphasis added, internal citation omitted).

The same fact, articulated using the same language, was previously raised in Scottsdale's Response to the Horowitzes' Motion for Summary Judgment, ECF No. 15, which was filed on June 14, 2017. If the Horowitzes wished to explore the contours of the insurance policy Scottsdale issued to Solutions, they were notified of the policy's effective dates nearly two years before the Reply was filed. The Horowitzes' Motion to Strike is DENIED.

## B. Motion to Supplement the Record

The Horowitzes' Motion to Strike also contains a Motion to Supplement the Record, which amounts to a belated attempt to resurrect a previously-conceded argument concerning the notice required to cancel the Policy. The Horowitzes acknowledge that this argument should have been raised in their Response to the Motion for Summary Judgment, but urge the Court to consider it anyway. The Court has considered the Horowitzes' untimely arguments and finds them easily resolved.

The Horowitzes assert that, under the terms of the Policy, Scottsdale was required to provide EMS with ten days' notice prior to the cancellation of the Policy for non-payment of premiums. Scottdale was permitted to cancel the Policy with written notice of cancellation at least ten days before the effective date of cancellation, if the cancellation was for non-payment of a premium. Mot. to Strike Ex. 1, at 3-4. ECF No. 41-1. The Horowitzes argue that, because EMS was only given three days' notice, Scottdale's cancellation of the policy was improper and ineffective.

The cited provisions are, however, inapplicable, because the Policy was not cancelled by Scottsdale for non-payment of premiums. Indeed, the Notice of Cancellation shows that IFPS paid the premiums to Scottsdale as required by the Agreement. FAC Ex. C. Rather the Policy was cancelled by IPFS *on behalf of EMS*, pursuant to the power of attorney granted to IFPS under the Agreement.[2]

Because the Policy was cancelled by IFPS acting on behalf of EMS, and not by Scottsdale, the provisions governing advance notice in the event of cancellation by Scottsdale do

---

[2] While the Policy requires either ten days' or thirty days' written notice before Scottsdale could cancel coverage, no such limitations are imposed when the insured cancels the Policy. In that case, all the Policy requires is "advanced written notice of cancellation" stating the effective date of cancellation. Mot. to Strike, Ex. 1, at 3. ECF No. 41-1; FAC Ex. B, at 37. These requirements are satisfied by the Notice of Cancellation sent to Scottsdale by IPFS. FAC Ex. C.

not apply. With respect to Scottsdale, the Policy was properly cancelled as of May 1, 2014. The Horowitzes' Motion to Supplement the Record is DENIED.

## II. Motion for Summary Judgment

Scottsdale moves for summary judgment on the basis that the injury alleged by the Horowitzes in the Underlying Action occurred after the Policy was cancelled and therefore falls outside of the covered period. In response, the Horowitzes argue that, by undertaking to defend EMS in the Underlying Action, Scottsdale has waived its right to dispute whether the facts giving rise to that representation are outside the scope of the Policy. The Horowitzes further argue that the representations made to them by EMS's prior counsel regarding liability insurance preclude Scottsdale from disputing coverage under principles of equitable estoppel.

As Scottsdale points out, the Court resolved the questions of estoppel and waiver in favor of Scottsdale when it denied Horowitzes' previous motion for summary judgment. The Court has reviewed the record and finds no new factual disputes or legal developments that justify a different conclusion on waiver and estoppel when raised in opposition to Scottsdale's motion for summary judgment.

### A. Waiver

Under California law, "waiver is the intentional relinquishment of a known right after knowledge of the facts." *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 31, Cal. Rptr. 2d 370 (Cal. 1995) (internal quotation marks, alterations, and citations omitted). "The burden is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and doubtful cases will be decided against a waiver." *Id.* A waiver may be express or implied, "based on conduct indicating an intent to relinquish the right." *Id.* The doctrine of waiver "cannot be applied to expand coverage." *Id.* at 32.

The California Court of Appeals rejected a similar waiver argument in *Ringler Assocs. Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1188, 96 Cal. Rptr. 2d 136 (Cal. Ct. App. 2000). In that case, the insurer undertook to defend the insured for over two years before issuing a reservation of rights. *Id.* The insured argued that, by undertaking the defense, the insurer had admitted coverage and waived its right to contest its duty to defend or indemnify. *Id.* The court rejected this argument as "completely meritless." *Id.* "[T]he courts have repeatedly held that an insurer does not waive or relinquish any coverage defenses it fails to assert at the time of its acceptance of a tender of defense, even when it does not make any express and full reservation of rights for a substantial period of time after the defense has been accepted." *Id.* at 1189.

In this case, the record shows that the loss giving rise to the Underlying Action occurred outside of the period covered by the Policy. Consistent with *Ringler*, Scottsdale did not waive its rights to contest coverage simply by undertaking to defend EMS, or by issuing a letter reserving its rights months after undertaking the defense of EMS.

### B. Equitable Estoppel

To demonstrate equitable estoppel, a party must show "(1) that the person to be estopped had knowledge of the true facts; (2) that action on his part intended or reasonably interpreted as intended to be acted upon by the person asserting the estoppel; (3) that the one asserting the estoppel was ignorant of the true facts; and (4) that there was detrimental reliance on the estopped person's conduct." *Miller v. Elite Ins. Co.*, 100 Cal. App. 3d 739, 754, 161 Cal. Rptr. 322 (Cal. Ct. App. 1980). In the insurance context, this requires (1) a "reasonable belief" that the insurer would provide coverage; and (2) a finding of detrimental reliance by the party asserting estoppel. *Ringler*, 80 Cal. App. 4th at 1190. "The existence of estoppel is a question of fact and the party asserting estoppel bears the burden of proving it." *S. F. Bay Area Rapid Transit Dist. v.*

*Gen. Reinsurance Corp.*, 111 F. Supp. 3d 1055, 1070 (N. D. Cal. 2015) (internal citations omitted).

"It is the general and quite well settled rule of law that principles of estoppel and implied waiver do not operate to extend the coverage of an insurance policy after the liability has been incurred or the loss sustained." *Aetna Cas. & Sur. Co. v. Richmond*, 76 Cal. App. 3d 645, 652-53, 143 Cal. Rptr. 75 (Cal. Ct. App. 1977) (internal quotation marks, alterations and citations omitted). The general rule is subject to a well-established exception:

> [I]f a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or non-coverage. In other words, the insurer's unconditional defense of an action brought against its insured constitutes a waiver of the terms of the policy and an estoppel of the insurer to assert such grounds.

*Miller*, 100 Cal. App. 3d at 755 (internal quotation marks and citation omitted).

In this case, Scottsdale did not undertake an "unconditional defense" of EMS, nor is this a case where Scottsdale is asserting a ground of forfeiture or noncoverage for the first time "in an action upon the policy." Rather, Scottsdale issued a letter reserving its rights in January 2017, during the pendency of the Underlying Action.

The doctrine of equitable estoppel similarly cannot be used to cover injuries that occurred after the policy ended. In *S. F. Bay Area Rapid Transit Dist.*, the insurer contended that the injury in question had occurred after the insurance policy ended. *S. F. Bay Area Rapid Transit Dist.*, 111 F. Supp. 3d at 1059. The court held that "the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom." *Id.* at 1071 (quoting *Supervalu, Inc. v. Wexford Underwriting Mgrs., Inc.*, 175 Cal. App. 4th 64, 77, 96

Cal. Reptr. 3d 316 (Cal. Ct. App. 2009)). "[T]o the extent that the date of injury falls outside of General Reinsurance's excess coverage policy, BART cannot use equitable estoppel to find that it does. For this reason, alone, estoppel does not apply." *Id.*

In this case, as in *S. F. Bay Area Rapid Transit Dist.*, the Horowitzes cannot use the doctrine of equitable estoppel to expand the Policy to cover a loss that occurred after the Policy was cancelled.

As the Horowitzes' injury occurred after the Policy was cancelled, it falls outside of the policy period. For the reasons set forth above, neither waiver nor equitable estoppel will serve to bring that injury back within the period covered by the Policy. Scottsdale's Motion for Summary Judgment is therefore GRANTED.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Strike and to Supplement the Record, ECF No. 41, is DENIED. Plaintiff's Motion for Summary Judgment is GRANTED. ECF No. 38. Scottsdale is not obliged either to defend or to indemnify Defendant Elite Moving Systems, Inc. for the injuries alleged by Defendants Jay Horowitz and Kim Horowitz in Jackson County Circuit Court Case Number 16CV08738. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this 29th day of July, 2019.

Ann Aiken
United States District Judge